CIRCUIT COURT OF THE CITY OF ROANOKE

Howell's Motor Freight, Inc., et al.

v.

Virginia Department of Taxation

October 27, 1983

Case No. Law 82-0846

By JUDGE JACK B. COULTER

The plaintiffs are individual shareholders or their spouses of Howell's Motor Freight, Inc., a Subchapter S corporation. Howell's is a motor carrier of freight doing business in several states in addition to Virginia, which is its home state. As a Subchapter S corporation it does not pay any federal corporate income taxes nor to any state, such as Virginia, which recognizes such corporate structure. As a Subchapter S corporation, its corporate income is considered to have been distributed as dividends to its shareholders; its income is taxable only to its individual owners. Hence, the corporate income tax is avoided and favorable tax consequences not enjoyed by the standard corporation are the result.

Several of the states in which Howell's does business, however, such as North Carolina and Kentucky, do not recognize the Subchapter S corporation. In those states for the years 1977 through 1979 Howell's has paid a corporate income tax totalling $20,991 on income generated within those states. For those same years Virginia has imposed its state income tax on the individual shareholders of Howell's without allowing any credits for the state income taxes imposed by

North Carolina and Kentucky on the corporate income earned in those states. In other words, the individual shareholders of Howell's are paying individual income taxes on income already taxed against their corporation by North Carolina and Kentucky. If Howell's was not a Subchapter S corporation, but a corporation of the traditional type, Virginia would allow credits for the corporate income taxes paid to other states on out-of-state income.

The plaintiffs have brought this suit seeking the correction of what they claim to have been erroneous or improper assessments of state taxes for the years 1977 through 1979. Whether or not their application for relief, which is supposedly subject to a three-year limitation, has been timely made for some of those years has not been questioned. The taxes as assessed have been paid under protest by the individual plaintiffs and a refund of the amount paid by their corporation to North Carolina and Kentucky is claimed.

The major thrust of the complaints of the individual plaintiffs is that they have been subjected to double taxation and discriminatory treatment. They charge, in addition, that the assessment of the taxes on them as individual shareholders without giving them credit for the taxes which their corporation has paid on out-ofstate income violates the intent of § 58-151.015 of the Code of Virginia. They further suggest that such assessment is erroneous because it is an undue burden on interstate commerce, constitutes a taking of property without due process of law, and denies to the applicants equal protection of laws -- all in contravention of the federal and state constitutions. They also implore the court as one apparently "charged with formulation of tax policy. . . to correct this inequitable and unjust situation. . . (and) to do its part to correct the injustice done to these individual taxpayers." Plaintiffs' Memo, pages 7-8.

That the corporation itself as a party plaintiff has no standing to protest is, of course,

obvious as no taxes have been assessed by the state of Virginia against Howell's Motor Freight, Inc.

The Department of Taxation, on the other hand, simply urges that it has applied the law of the state as written, that the individual shareholders of a Subchapter S corporation are not entitled to any credit for taxes that their corporation might have paid in their behalf to other states on income earned outside the state, that such treatment is not discriminatory, that if double taxation does result, it is not of itself invalid or unconstitutional, and that if any perceived inequities exist they should be corrected by the legislative branch of government, not the executive or judicial.

## ANALYSIS AND DECISION

The plaintiffs rely on §§ 58-151.035 and 58-151.050 as mandating the apportionment of the income of Howell's. Both of these sections appear under Article 7.4, which is devoted to "corporations," as a part of Chapter 4 to Title 58. § 58-151.035 provides that:

> Any corporation having income from business activity which is taxable both within and without this State, shall allocate and apportion its Virginia taxable income as provided in §§ 58-151.034 through 58-151.050. (emphasis added)

The inclusive sections referred to (151.034 through 151.050) are not applicable to this case except § 58-151.050, which sets forth the formula that motor carriers may use in apportioning their income earned in several states.

The fallacy in the plaintiffs' argument, however simple it might be, is that the corporation involved in this litigation, Howell's Motor Freight, Inc., has no income which is taxable in Virginia. Notwithstanding the several sections under this article and throughout Chapter 4, which contain numerous

definitions, exemptions, and provisions for modifications and adjustment, there is no refinement of the concept of taxable income which permits the credits the plaintiffs seek.

A case somewhat in point, at least in principle, is Ryan v. Commonwealth, 169 Va. 414 (1937). In that case a Virginia resident brought suit to recover taxes paid to the state of Virginia on income earned from a trust fund, the corpus of which was situated in New York. The state of New York had assessed a tax on the same income against the trustees. The aggrieved Virginia taxpayer urged the same argument which the plaintiffs at bar advance: that the Virginia assessment of a tax on income that had already been taxed by the state of New York amounted to double taxation and violated the due process clause of the Fourteenth Amendment.

In discounting the plaintiff's arguments Justice Eggleston cited several United States Supreme Court cases. Upholding the double taxation on income, Justice Eggleston noted at page 421:

> We think it is settled in Lawrence v. State Tax Commission, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102, 87 A.L.R. 374, and in People of the State of New York v. Graves, supra (300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666, 108 A.L.R. 721) that the domicile and residence of the taxpayer in Virginia is a sufficient basis to sustain an income tax although the income so received and enjoyed by the taxpayer may have originated in another state.

The court took pains to point out that the New York and Virginia income taxes were levied on different taxable interests, as in the case at bar. Such argument had "considerable force," the court noted; but it was considered unnecessary to resolve the issue because, as the court observed:

. . . we need not decide (this issue), since the validity of that tax (the New York tax) is not before us.

Tax law almost by definition is statutory. That it is sometimes discriminatory is axiomatic; that it is burdensome is painfully obvious. To determine what is taxable income we must look to the statutes. We are here concerned with the taxation by the Virginia Department of Taxation of the income of the individual plaintiffs. § 58-151.013 defines "Virginia taxable income" for individuals as follows:

> (a) General – The Virginia taxable income of a resident individual means his federal adjusted gross income for the taxable year with the modifications specified in this section. (emphasis added)

There then follows numerous modifications: two categories of specific additions, five categories with numerous subcategories of subtractions, and numerous other deductions, modifications and adjustments. In none of these detailed and specific areas of approved amendments to the federal adjusted gross income is any allowance provided for taxes which might be paid by a Subchapter S corporation to a sister state that does not recognize such a business entity on income earned in that state.

§ 58-151.015, which the plaintiffs urge should be applied to them, is obviously limited to individuals. It provides in pertinent part that:

> (a) Whenever a resident of this State has become liable for income tax to another state, on earned or business income,. . . , derived from sources without this State and subject to taxation under this chapter . . .

And, of course, none of the individual plaintiffs as residents (defined by § 58-151.02(e)(1)(i) as applying only to "natural persons") of this state have become

so liable.

> . . . the amount of income tax payable <u>by him</u> under this chapter shall be credited on <u>his</u> return with the income tax so paid <u>by him</u> to · such other state. . . (emphasis added)

And, · of course, it is the Subchapter S corporation that paid the state income taxes to North Carolina and Kentucky, not any individual "him" as expressly provided for in this statute.

Hence, as there are modifications to the federal · adjusted gross income specified in the section devoted to such possible allowances and since § 58-151.015(a) is clearly not applicable, it being limited to individuals who may have paid taxes to a sister state, the legislative omission claimed by the plaintiffs cannot be provided by judicial decree. It simply must be assumed that the General Assembly acted intelligently and consciously in <u>not</u> editing or modifying further the concept that Virginia taxable income on an individual is defined by his federal adjusted gross income.

The plaintiffs misconceive the judicial function when they suggest that the court has an affirmative role to play in the formulation of tax policy or "to do its part" in correcting injustices which might have resulted from unfortunate legislative oversight. The court is not a superlegislature to amend or modify unwise or incomplete laws. As observed in 71 Am. Jur. 2d, State and Local Taxation, § 77, at page 401:

> As long as the legislature, in imposing a tax, does not violate applicable constitutional limitations or restrictions, the courts have no concern with the wisdom or policy of the exaction imposed, the political or other collateral motives behind it, or the amount to be raised, such matters

being exclusively for the lawmaking body, whose action will not be reviewed by the judiciary.

A Subchapter S corporation, it should be remembered, is given certain preferential tax treatment in the first place in not being required to pay any corporate income tax at all. The stockholders of most corporations are subject to the equivalent of double taxation; first, their corporation is taxed on its corporate profits and then when dividends are paid, the individual must pay an additional personal income tax on such income received. The plaintiffs have received the benefits of this favorable tax law; to the extent that some states have not seen fit to extend such benefits, they are being obliged to suffer what is a double taxation on certain of their income. But this consequence is not unconstitutional and is no more discriminatory than many other taxes. As Justice Holmes observed in Ft. Smith Lumber Co. v. Arkansas, 251 U.S. 532, 64 L.Ed. 396, 40 S.Ct. 304, the constitutional limitations of the Fourteenth Amendment:

> . . . no more forbids double taxation than it does doubling the amount of a tax.

For a thorough discussion of double taxation, see 71 Am. Jur. 2d, State and Local Taxation, §§ 31-41, 457.

Bared to the basics, the fundamental point at issue is the allowability of credits on one's tax liability. It is well to recall, therefore, the philosophy or rationale of allowing such credits. This is eloquently expressed in 71 Am. Jur. 2d, State and Local Taxation, § 549 at page 823 as follows:

> . . . Because statutes allowing credits against income tax due reflect privileges accorded as a matter of legislative grace rather than taxpayer right, and because credits have a far greater impact on the ultimate liability of the taxpayer than deductions, such statutes must be strictly construed against the taxpayer and in favor

construed against the taxpayer and in favor of the taxing authority. . . .

Not only must such statutes of grace be strictly construed, but the burden of persuasion is upon the applicant to prove the error of the assessment. This was the precise holding of the court, incidentally, in Union Tanning Co. v. Commonwealth, 123 Va. 610 (1918).

## THE COURT'S RULING

In strictly construing the applicable statutes and in holding the plaintiffs to the burden of proof, it is the judgment of this court for all the reasons aforesaid that there has been no violation of constitutional principles, that the double taxation which has resulted is not forbidden, nor does it constitute an undue burden on interstate commerce, nor does it amount to the taking of property without due process, nor are any citizens being unfairly denied the equal protection of the laws.

Notwithstanding all of the above conclusions, however, the individual plaintiffs have made out a strong case for legislative reform, and if this were a legislative forum they would carry the day. But this is not a legislature; the function of the courts is to interpret the laws, not make them. With genuine sympathy for the plight of the individual plaintiffs, therefore, their application for correction of the tax assessments must be denied.